United States Courts Southern District of Texas
FILED
*8/14/2023*
Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EVAN DOMANIC, § § § Plaintiff, § § v. § CIVIL ACTION NO.: 4:22−cv−386 § CHRISTIAN BROTHERS § AUTOMOTIVE CORPORATION, § § Defendant. § | |

## FIRST AMENDED ANSWER of
## CHRISTIAN BROTHERS AUTOMOTIVE CORPORATION

Defendant Christian Brothers Automotive Corporation ("Christian Brothers") files this its First Amended Answer to the Second Amended Complaint (Doc.09) ("Complaint") of Evan Domanic ("Plaintiff"), as follows.

### I.  Answer to Plaintiff's Specific Allegations

Except as hereinafter expressly admitted, qualified, or otherwise answered, Christian Brothers denies each and every allegation and assertion in the Complaint. The following answers to Plaintiff's specific allegations correspond to the numbered paragraphs in the Complaint.

1. Admitted that venue is proper.

2. Admitted that the Court has jurisdiction.

3. Admitted that Plaintiff resides in Hays County, Texas.

4. Admitted that Christian Brothers is a company doing business in Texas from its corporate office in Houston, Texas, otherwise denied.

5. Admitted that Plaintiff completed an online contact inquiry form on the Christian Brothers' website expressing interest in information about becoming a franchisee, otherwise denied.

6. Admitted that Plaintiff and Brandon Thomas had a telephone call on October 21, 2020, otherwise denied.

7. Plaintiff's characterization in paragraph 7 of the Complaint of the October 21, 2020 telephone call is denied.

8. Admitted that Mr. Thomas and Plaintiff prayed together, otherwise Plaintiff's characterization in paragraph 8 of the Complaint of the October 21, 2020 telephone call is denied.

9. Admitted that Mr. Thomas scheduled a second call to move forward with the process, otherwise denied.

10. Admitted that Plaintiff and Brandon Thomas had a telephone call on October 27, 2020 and that Mr. Thomas emailed a request for consideration form to Plaintiff on that date, otherwise denied.

11. Admitted that on November 5, 2020 Brandon Thomas emailed forms (background check, financial statement, FCRA disclosure and Summary of Rights) to Plaintiff, otherwise denied.

12. Paragraph 12 of the Complaint is denied in that the next telephone calls between Plaintiff and Mr. Thomas were as follows: a two minute call on November 10, 2020, a one minute call on November 12, 2020 and a two minute call on November 17, 2020.

13. Admitted Mr. Thomas informed Plaintiff on November 17, 2020 that Christian Brothers would not be moving forward to the next step in the process, otherwise denied.

14. Plaintiff's characterization in paragraph 14 of the Complaint of the November 17, 2020 telephone call is denied.

15. Plaintiff's characterization in paragraph 15 of the Complaint of the November 17, 2020 telephone call is denied.

16. Plaintiff's characterization in paragraph 16 of the Complaint of Mr. Thomas' interactions with Plaintiff is denied.

17. Admitted that Plaintiff incorporates by reference his prior fact allegations into his cause of action allegations, otherwise denied.

18. Denied that 42 U.S.C. § 1981 applies to Christian Brothers under the facts alleged, that said law was violated in any way, or that Christian Brothers unlawfully discriminated against Plaintiff based on his race/ethnicity.

19. Plaintiff's arguments in paragraph 19 of the Complaint are denied.

20. Plaintiff's arguments in paragraph 20 of the Complaint are denied.

21. Plaintiff's arguments in paragraph 21 of the Complaint are denied.

22. Plaintiff's arguments in paragraph 22 of the Complaint are denied.

23. Plaintiff's arguments in paragraph 23 of the Complaint are denied.

24. Plaintiff's arguments in paragraph 24 of the Complaint are denied.

25. Plaintiff's arguments in paragraph 25 of the Complaint are denied.

26. Plaintiff's arguments in paragraph 26 of the Complaint are denied.

27. Plaintiff's arguments in paragraph 27 of the Complaint are denied.

28. Admitted that Christian Brothers is a faith-based business, otherwise Plaintiff's arguments in paragraph 28 of the Complaint are denied.

29. Plaintiff's alleged entitlement to damages is denied.

30. Plaintiff's DTPA claim is no longer a part of this action pursuant to the Court's July 15, 2022 Order (Doc.16), nonetheless, Plaintiff's arguments in paragraph 30 of the Complaint are denied.

31. Plaintiff's DTPA claim is no longer a part of this action pursuant to the Court's July 15, 2022 Order (Doc.16), nonetheless, Plaintiff's arguments in paragraph 31 of the Complaint are denied.

32. Admitted Plaintiff demands a jury trial, otherwise denied. Equitable damage issues, if any (such as past and future economic losses), are for the judge to decide, not the jury.

33. Denied that Plaintiff is entitled to any damages or remedies at law or in equity as alleged in the Complaint's Prayer for Relief.

## II. Affirmative Defenses and Specific Defensive Allegations

By way of further answer and in addition to the foregoing admissions and denials, Christian Brothers asserts the following affirmative defenses and specific defensive allegations (in the aggregate or the alternative as may be applicable or necessary):

**FIRST DEFENSE: Religious incompatibility does not support a § 1981 claim.**

1. The Complaint fails to state a claim upon which relief can be granted because it relies solely on 42 U.S.C. § 1981. Section 1981 can only provide recovery if Plaintiff proves that "but, for" his Jewish race or ethnicity (and *not* his Jewish religion), he would have entered into a franchise agreement with Christian Brothers. "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination *solely* because of their ancestry or ethnic characteristics."[1] Therefore, to make out a case under § 1981, Plaintiff must prove he was subjected to intentional discrimination based solely on the fact that he was born

---

[1] *Saint Francis College v. Al-Khazraji,* 481 U.S. 604, 613 (1987) (emphasis added).

First Amended Answer of Christian Brothers Automotive Corporation 4

Jewish, rather than because of his Jewish religious beliefs.[2] That is, Plaintiff has no claim under Section 1981 if his non-Christian beliefs played any part in the reasons for the allegedly wrongful decision by Christian Brothers.

2. Christian Brothers is a faith-based Christian franchisor with a stated mission to "glorify God by providing ethical and excellent… service for our customers" as publicized on its website which invites interested persons to seek franchising information. Christian Brothers achieves this mission by "looking for franchise team members who have made their faith a central part of their lives. The teachings of Christ have informed how we do business for more than 40 years."

3. Christian Brothers welcomes interest in becoming a franchisee by anyone of any race or ethnicity, Jewish or otherwise, provided the person shares in the Christian faith that is central to the Christian Brothers organization and mission. Christian Brothers did not know Plaintiff's race or ethnicity when it was engaged in the "getting to know you" process by telephone with Plaintiff. When Christian Brothers learned that Plaintiff's faith was based on Judaism, not Christianity, it discontinued the introductory telephone calls.

4. The Jewish faith is incompatible with the Christian corporate mission and purpose of the Christian Brothers organization. That mission is carried out through the Christian faith of the owners of Christian Brothers franchisees in their everyday business operations. Plaintiff disqualified himself from seeking to be a Christian owner of a Christian Brothers franchisee when he stated he is not a Christian. The reason for that decision is based on religious belief, not race or ethnicity. Any person of any race or ethnicity can be of the Christian faith or of the Jewish faith. Since race or ethnicity was not the reason for the decision made the subject of this lawsuit, and

---

[2] Id.

religion was the reason, there is no basis for recovery under Section 1981, which does not apply to decisions based on religious belief.

**SECOND DEFENSE**: Plaintiff lacks standing or capacity to sue under § 1981.

5.      Christian Brothers enters into franchise agreements with entities, not individuals. If a franchise agreement had been entered into after the preliminary "getting to know you" telephone calls between Plaintiff and Christian Brothers, the agreement would have been with a corporate entity formed by Plaintiff and not directly with Plaintiff. Section 1981 only applies to the actual parties in interest to contracts, not to third parties or those with derivative relationships.

6.      Shareholders and owners of entities that are parties to contracts do not have standing or capacity to sue over the denial of a contract to the entity that they may own, control or operate. Since Plaintiff was not and would not be a contracting party to any franchise agreement with Christian Brothers, he lacks standing and capacity to sue under § 1981.

**THIRD DEFENSE:** No contracting relationship existed to support a § 1981 claim.

7.      Section 1981 only applies to contract formation activities. The scope of § 1981 is not limitless nor does it extend to interactions which are tenuous, noncontractual and remotely preliminary. The telephone calls between Plaintiff and Christian Brothers were first introductions and "getting to know you" calls amongst total strangers. They were not transactional and were not within the scope of § 1981.

8.      Contracting relationships regulated by § 1981 are generally found to exist after a decision has been made regarding a specific purchase. There were but a few short introductory telephone calls where the parties had not even met one another in person. No transactions of any kind were decided upon or committed to by either party. No terms, price, timing, location, financing, leasing or other transaction details were discussed.

9. There is no claim upon which relief can be granted "against a party with whom the defendant has not contracted or sought to contract" and where there is no "tangible contract interest" other than one that "is at most prospective and speculative and thus cannot be the basis of a § 1981 claim."[3]

**FOURTH DEFENSE: 1st Amendment Free Exercise Clause precludes § 1981 claim.**

10. The First Amendment states that "Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof"* (emphasis added). The Supreme Court construes the First Amendment as not only protecting the freedom to believe but the freedom to act.[4]

11. The Free Exercise Clause of the First Amendment to the U.S. Constitution exempts Christian Brothers from enforcement of Section 1981 under the circumstances alleged in the Complaint because such enforcement would infringe on the religious exercise of Christian Brothers by means of a regulation that is not neutral and lacks a compelling interest to justify the infringement of the freedom to enter into franchise agreements with fellow Christian believers as a means of living out the Christian faith through the business operations of each Christian Brothers location.

**FIFTH DEFENSE: 1st Amendment Right of Free Association precludes § 1981 claim.**

12. The Right of Expressive Association of the First Amendment to the U.S. Constitution exempts Christian Brothers from enforcement of Section 1981 under the circumstances alleged in the Complaint.

13. "[I]mplicit in the right to engage in activities protected by the First Amendment" is "a corresponding right to associate with others in pursuit of a wide variety of political, social,

---

[3] *Jackson v. Biedenharn,* 429 F. App'x 369, 371-72 (5th Cir. 2011).
[4] *Cantwell v. Connecticut,* 310 U.S. 296, 303 (1940).

economic, educational, religious and cultural ends."[5] This freedom can be unconstitutionally burdened by "intrusion into the internal structure or affairs of an association" like enforcement of a "regulation that forces the group to accept members it does not desire"[6] or which who are not compatible with their religious, faith-based mission.

14. Because forcing a group to accept certain members may impair the group's ability to express its views, "freedom of association plainly presupposes a freedom *not* to associate."[7] "The forced inclusion of an unwanted person in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints."[8]

15. Christian Brothers is engaged in expressive association through its mission of glorifying God by providing ethical and excellent service for their customers by contracting exclusively with "franchise team members who have made their [Christian] faith a central part of their lives" such that the "teachings of Christ… inform how we do business" throughout the 40 years of existence of Christian Brothers. If Christian Brothers is forced to include non-Christians as franchisees simply because they are of Jewish ethnicity, Christian Brothers will be significantly impaired in publicly and privately modeling the life of Jesus Christ in their business operations and in advocating acceptance of Jesus Christ as an individual's Lord and Savior.

16. There is no legally compelling interest to support the enforcement of Section 1981 in a manner that would force Christian Brothers to contract with franchisees who are not Christian believers.

---

[5] *Roberts v. United States Jaycees,* 468 U.S. 609, 622 (1984).
[6] *Id.* at 623.
[7] *Boy Scouts of Am. v. Dale,* 530 U.S. 640, 647-48 (2000) (cleaned up, emphasis added), quoting *Roberts,* 468 U.S. at 623.
[8] *Id.* at 650.

**SIXTH DEFENSE:** 1st Amendment Right of Free Speech precludes § 1981 claim.

17. The Right of Free Speech of the First Amendment to the U.S. Constitution exempts Christian Brothers from enforcement of Section 1981 under the circumstances alleged in the Complaint.

18. Christian Brothers, as a religiously expressive entity, is entitled to First Amendment protection. *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2311 (2023), citing *Boy Scouts of America v. Dale,* 530 U.S. 640, 654 (2000) (emphasis added). Compelling a faith-based corporation to contract with a prospective franchisee with a contrary religious belief "would interfere with [its] choice not to propound a point of view contrary to its beliefs." *Id* (internal citations omitted).

19. Christian Brothers is engaged in both pure speech and expressive association through its mission of glorifying God by providing ethical and excellent service for customers by contracting with "franchise team members who have made their [Christian] faith a central part of their lives" such that the "teachings of Christ… inform how we do business." Christian Brother's mission is carried out through its Christian franchisees as they share their Christian faith with those who cross their paths through business as customers, vendors, employees and members of the public.

20. If Christian Brothers is forced to include non-Christians as franchisees simply because they are of Jewish ethnicity as Plaintiff alleges, Christian Brothers will be significantly impaired in expressing the life of Jesus Christ by and through its franchised business operations through each franchisee. Christian Brothers' mission depends on the right of free speech by each franchisee to advocate for the acceptance of Jesus Christ as an individual's Lord and Savior and to share the Christian Gospel. A nonbeliever in Jesus Christ cannot fulfill this mission.

21. There is no legally compelling interest to support the enforcement of Section 1981 in a manner that would force Christian Brothers to alter its free speech to include non-Christian speech and viewpoints by adherents of other religions as part of its corporate and brand message. As recently held by the Supreme Court, a law which "seeks to force [one] to utter what is not in [one's] mind about a question of… religious significance… is something the First Amendment does not tolerate" and accordingly "[n]o government… may affect a speaker's message by forcing [the speaker] to accommodate other views… alter the expressive content of [the] message… and no government may interfere with [the speaker's] desired message." *Elenis*, 143 S. Ct. at 2318 (internal quotes and citations omitted).

**SEVENTH DEFENSE: Religious Freedom Restoration Act precludes § 1981 claim.**

22. The Religious Freedom Restoration Act of 1993 ("RFRA") exempts Christian Brothers from enforcement of Section 1981 under the circumstances alleged in the Complaint. The RFRA "was designed to provide very broad protection for religious liberty."[9] The RFRA prohibits federal law from substantially burdening the exercise of religion. As alleged in the Complaint, Section 1981 would substantially burden the exercise of religion by Christian Brothers.

23. It is the sincere religious belief of Christian Brothers to live out and share its faith in Jesus Christ through the business operations of franchisees who ascribe to the same religious beliefs and mission. The enforcement of Section 1981 as advocated in the Complaint pressures Christian Brothers to abandon its mission of associating only with franchisees who share in the Christian faith and instead accept non-believers who are not committed to living out the Christian faith in their business operations. The law imposes substantial damages and penalties

---

[9] *Burwell v. Hobby Lobby,* 573 U.S. 682, 706 (2014).

(compensatory and punitive damages, among other things) if Christian Brothers does not comply with Section 1981 if it were to apply as alleged in the Complaint.

24. Accordingly, Section 1981 would substantially burden the ability of Christian Brothers to conduct its business in accordance with its sincerely held religious beliefs, which makes Section 1981 unenforceable under the RFRA.

**EIGHTH DEFENSE**: 1st Amendment's ministerial exemption precludes § 1981.

25. Christian Brothers is a faith-based business organization which relies on its franchising format to accomplish its Christian faith-based mission through each of its individual franchisee owners. Individual franchisee owners who are Christian believers are the cornerstone of carrying out the Christian Brothers' religious mission who qualify as "ministers" exempt from the reach of discrimination laws such as Section 1981 according to Supreme Court jurisprudence.

26. After nearly fifty years of existence in the lower courts, the Supreme Court expressly recognized the Ministerial Exemption to discrimination laws in 2012. The Ministerial Exemption is grounded in the First Amendment, which precludes application of discrimination laws to a faith-based organization's decisions as to whom its "ministers" or religious leaders should be. For purposes of determining the applicability of the ministerial exemption from discrimination laws, the Supreme Court defines "ministers" as persons who hold positions which include religious and spiritual responsibilities within a faith-based organization.[10]

27. Franchisees are "ministers" for purposes of this exemption because they are chosen based on their sincerely held Christian faith as demonstrated by how they live out their faith on a daily basis by leading others in theologically Christian prayer, sharing the good news of Jesus

---

[10] See *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC,* 565 U.S. 171 (2012) and *Our Lady of Guadalupe Sch. v. Morrissey-Berru,* 140 S. Ct. 2049 (2020).

Christ with their customers and community, demonstrating Christ-like leadership and applying Christian principles in the treatment of their employees and customers.

28. Accordingly, the decisions made by Christian Brothers in selecting persons who will be owners of a franchisee are exempt from the reach of federal discrimination laws such as Section 1981. To apply the law otherwise would unconstitutionally interfere with a faith-based organization's ability to choose its own religious leaders to carry out its religious mission.

**NINTH DEFENSE: Contractual waiver and release.**

29. Shortly after Plaintiff was informed by Mr. Thomas that Christian Brothers would not be continuing the conversations with Plaintiff, Plaintiff contacted the Christian Brothers corporate offices to demand his money back from Christian Brothers as compensation for how he felt he was mistreated.

30. Plaintiff stated he was in the business of assisting attorneys with their social media marketing. He said he would prefer to work something out rather than going to one of those attorneys and taking his dispute to court against Christian Brothers. Plaintiff said it was wrong for Christian Brothers to accept his "Jewish money" in exchange for servicing his vehicle, but to not take his "Jewish money" by agreeing to enter into a franchisee agreement with him.

31. The matter was escalated to a Christian Brothers corporate officer who explained that as a faith-based organization it was necessary for franchisees to be Christians to live out the organization's Christian values and mission, and he could not be expected to fulfill that expectation since he indicated that he was not a Christian. Christian Brothers did not want Plaintiff to remain so offended as to take legal action against Christian Brothers. Plaintiff indicated he would not go to court and would be satisfied if he received $3,218.98 from Christian Brothers.

33. Since Plaintiff set a specific value to the harm that he claimed he suffered from the incident, Christian Brothers agreed to pay that amount to end the dispute. Without admitting any wrongdoing, and in acceptance of Plaintiff's offer, Christian Brothers promptly issued a check to Plaintiff in November 2020 in the amount of $3,218.98 to avoid litigation threatened by Plaintiff and to settle the matter once and for all. Plaintiff promptly cashed the check after receiving it.

34. The foregoing transaction was an oral settlement agreement between Christian Brothers and Plaintiff which constitutes a binding release by Plaintiff of any legal liability which he alleged Christian Brothers had related to the ending of the conversations between Mr. Thomas and Plaintiff and the fact that Plaintiff was not going to become a franchisee. Said release and settlement agreement bars Plaintiff from bringing this legal action against Christian Brothers because such liability was waived and released by Plaintiff in November 2020.

35. For a contract to be enforceable, there must be (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. Under Texas contract law an oral agreement is as enforceable as one in writing.

36. Plaintiff made an offer to not take to court his dispute if Christian Brothers gave him his money back that he paid to a Christian Brothers franchisee in Lakeway for servicing his vehicle a few months earlier. Christian Brothers accepted the offer and promptly complied exactly with the terms of the offer by paying him the exact amount he paid for the servicing of his vehicle.

37. There was a meeting of the minds to exchange good and valuable consideration that was not otherwise owed to Plaintiff (because he did receive the auto services from the franchisee and Plaintiff was pleased with their quality) in exchange for Plaintiff's promise to not take his complaint to court. Plaintiff accepted the payment from Christian Brothers in November 2020 and

took no legal action in court until he later breached his agreement by filing this lawsuit in February 2022.

**TENTH DEFENSE: Plaintiff's claims are barred by equitable estoppel and laches.**

38. Plaintiff is estopped and prevented by laches from claiming damages and losses from on or about December 2020 to the present. For more than a year he failed to inform Christian Brothers that (a) he wished to be awarded a Christian Brothers franchise and that (b) the alleged failure of Christian Brothers to award such a franchise was a violation of federal law for which he was entitled to damages. Equitable estoppel and laches preclude Plaintiff from recovering damages during that time period because he did not inform Christian Brothers that there was an unresolved dispute for which he was incurring damages. In fact, he informed Christian Brothers of the contrary: that the matter was released, waived, settled and resolved by mutual agreement upon the payment by Christian Brothers of $3,218.98 to Plaintiff as he demanded. Plaintiff would be unjustly enriched if he recovered damages under these circumstances.

39. Furthermore, Plaintiff is estopped from complaining about being disqualified from becoming a franchisee based on his not being of the Christian faith, when having the same Christian faith as articulated in the Christian Brothers religious based corporate mission was plainly stated and knowable as a precondition of being a franchisee from the Christian Brothers website where he initiated first contact with Christian Brothers.

**ELEVENTH DEFENSE: Plaintiff's claims are barred or limited by mitigation, offset.**

40. Plaintiff cannot recover against Christian Brothers to the extent that he failed to make reasonable efforts to mitigate his alleged damages, if any, which includes his failure to act and his misleading actions as alleged in the preceding paragraphs. Alternatively, to the extent that

he has mitigated his alleged damages, Christian Brothers is entitled to offset those and other amounts from any alleged damages.

**TWELVTH DEFENSE: After-acquired evidence limits damages, if any.**

41. Plaintiff claims he would have become a franchisee but for race discrimination. However, Plaintiff did not submit to the usual vetting process used by Christian Brothers to qualify a candidate as a potential franchisee. For example, Plaintiff did not submit a financial statement or authorization to conduct a background or credit check when requested to do so. Consequently, even the most preliminary qualification checks were not applied to Plaintiff, any of which may have ruled him out as a candidate regardless of his religious faith, race or ethnicity.

42. If Christian Brothers discovers disqualifying information after conducting the usual candidate review process, or if facts are discovered establishing that Plaintiff acted with unclean hands, then Plaintiff should be barred from asserting his claims and/or recovering any damages, both under the principles of damages and equity and/or under the after-acquired evidence doctrine.

**THIRTEENTH DEFENSE: Other causes of damages, speculative losses barred.**

43. Plaintiff cannot recover mental anguish or emotional distress damages or damages for alleged economic loss such as lost profits or other damages to the extent that the same (a) was caused by factors other than the conduct of Christian Brothers, and/or (b) is speculative and unsubstantiated.

44. In most years, Christian Brothers receives inquiries of interest in franchising from as many as two thousand individuals. Typically, fewer than twenty franchisees actually receive an offer from Christian Brothers to enter into a franchise agreement. Accordingly, it is unlikely and highly speculative for Plaintiff to have both been offered and accepted an opportunity to enter into a franchise agreement. Only about 1% of the persons who initially contact Christian Brothers about

franchising actually end up in a franchise agreement, and often those who do become franchisees do not open their first store and begin receiving any revenue from operations until two years later.

**FOURTEENTH DEFENSE: No malice or reckless indifference for punitive damages.**

45. Plaintiff cannot recover punitive damages because at no time did any Christian Brothers management official or employee act with malice or reckless indifference or otherwise such to justify punitive damages.

46. Plaintiff cannot recover punitive damages because at all times Christian Brothers engaged in good faith efforts to comply with federal law.

47. Christian Brothers reserves the right to rely upon such other defenses and affirmative defenses as may become available or apparent during discovery in this case.

### III. Prayer for Relief

Based on the foregoing, a take nothing judgment should be entered as to Plaintiff's claims. Christian Brothers prays for such other and further relief to which it might be entitled under the law and in equity as applicable, including trial by jury and recovery of Christian Brothers' costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b) as the prevailing party in a proceeding under 42 U.S.C. § 1981 and recovery of costs and reasonable attorneys' fees pursuant to the Tex. Civ. Prac. & Rem. Code for breach of contract.

Respectfully submitted,

/s/ *Scott A. Agthe*
Scott A. Agthe
State Bar No. 00934800
FISHERBROYLES, LLP
3801 N. Capital of Texas Highway
Ste. E240, #431
Austin, Texas 78746
(512) 905-2593 Telephone
(512) 717-7745 Facsimile
scott.agthe@fisherbroyles.com
**Attorneys for Christian Brothers Automotive Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2023, the foregoing First Amended Answer of Christian Brothers Automotive Corporation was attached as an exhibit to *Defendant's Unopposed Motion for Leave to File Defendant's First Amended Answer,* which was electronically filed with the Clerk of the Court on August 11, 2023 using the CM/ECF system which will send a notice of electronic filing to all known counsel of record.

 */s/ Scott A. Agthe*
 Scott A. Agthe