UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVAN DOMANIC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 4:22−cv−00386 |
| | § | |
| CHRISTIAN BROTHERS | § | |
| AUTOMOTIVE CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT**

## I.  INTRODUCTION

Defendant is a Christian faith-based franchisor of auto repair stores. Its mission statement is "to glorify God by providing ethical and excellent automotive repair service for our customers." Defendant's website states "what sets Christian Brothers apart" is that "we are followers of Christ."

Because franchisees are vital to Defendant's faith-based mission, it only offers franchise agreements to Christians, not non-Christians. All 250 franchisees are Christians, racially diverse, including Christians of Jewish ethnicity.

Plaintiff inquired about franchising. Defendant's Brandon Thomas had three screening calls with Plaintiff. Plaintiff told Thomas he was of Jewish faith. In the fourth call Plaintiff alleges Thomas said the process was ending because Plaintiff was not a good cultural fit. Plaintiff alleges he asked if it was because he was Jewish and Thomas confirmed. Plaintiff alleges he took this to mean Jewish ethnicity, not Jewish faith, even though: (1) Plaintiff and Thomas only talked about faith, not ethnicity, and (2) Defendant's Christian values are prominent and in materials provided to Plaintiff. Plaintiff sued, claiming discrimination because of race—not religion.

## II.   TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ……………………………………………....   **1**

II.   TABLE OF CONTENTS …………………………………….....   **2**

III.   TABLE OF AUTHORITIES ………………………………….   **3, 4, 5**

IV.   STATEMENT OF FACTS …………………………………….   **6**

V.   SUMMARY OF THE ARGUMENT ………………………….   **7**

VI.   LEGAL ARGUMENT ………………………………………….   **8**

   A.   §1981 Inapplicable …………………………………….   **8**
     (1)   Religious Discrimination Not Actionable …………………………   **8**
     (2)   §1981 Inapplicable to Associational Contracts ………………………   **9**

   B.   §1981 Elements ………………………………………….   **9**
     (1)   No Evidence: But-For Causation (Element 4) ………………………   **10**
       (a)   Same Decision Test ……………………………   **10**
       (b)   Only One Conclusion on Causation ………………………   **10**
     (2)   No Evidence of Intentional Discrimination (Element 2) …………..   **11**
       (a)   No Knowledge of Ethnicity ………………………   **11**
       (b)   No Discrimination: Thomas' Implausible Statement Not Probative or Admissible ………………………………   **12**
     (3)   Plaintiff's Activity Not Enumerated in §1981 ……………………...   **13**

   C.   No Prima Facie Case ………………………………….   **13**
     (1)   Element 4: No Similarly-Situated Comparator ………………………   **14**
     (2)   Element 2: No Evidence Plaintiff Was Qualified, A Contract Was Available, Plaintiff Lost An Actual Contract Interest, Or That He Attempted A Contract ……………………………………………   **14**
       (a)   Plaintiff Not Qualified ………………………………   **14**
       (b)   No Evidence of Available Contracts, Only Speculation ……..   **14**
       (c)   No Actual Contractual Interest Lost …………………………   **15**
       (d)   No Attempt To Contract ………………………………   **17**
     (3)   Element 3: No Contract Proposal ………………………………   **18**

   D.   Plaintiff Cannot Prove Pretext ………………………………   **18**

   E.   Ministerial Exception Bars §1981 Claim ………………………   **18**

VII.   CONCLUSION & PRAYER FOR RELIEF …………………………...   **21**

### III.  TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE**

*Alkhawaldeh v. Dow Chem. Co.,*
    851 F.3d 422, (5th Cir. 2017) …………………………………………………..     **14**

*Arguello v. Conoco, Inc.,*
    330 F.3d 355, (5th Cir. 2003) …………………………………………………..     **17**

*Autry v. Fort Bend Indep. Sch. Dist.,*
    704 F.3d 344, (5th Cir. 2013) …………………………………………………..     **14**

*Bellows v. Amoco Oil Co.,*
    118 F.3d 268, (5th Cir. 1997) …………………………………………………..     **9, 15**

*Belton v. Geo Grp., Inc.,*
    2021 U.S. App. LEXIS 36150, (5th Cir. 2021) …………………………….....     **13**

*Body by Cook, Inc. v. State Farm Mut. Auto. Ins.,*     **9, 13,**
    869 F.3d 381, (5th Cir. 2017) …………………………………………………..     **14**

*Bollard v. California Province of the Soc'y of Jesus,*
    196 F.3d 940, (9th Cir. 1999) …………………………………………………..     **20**

*Boy Scouts of Am. v. Dale,*
    530 U.S. 640 (2000) …………………………………………………………..     **20**

*Braidwood Mgmt. v. EEOC,*
    70 F.4th 914, (5th Cir. 2024) …………………………………………………..     **19, 20**

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media,*
    140 S. Ct. 1009, 206 L. Ed. 2d 356 (2020) ………………………………….     **8, 10**

*Eastman Kodak Co. v. Image Tech. Servs., Inc.,*
    504 U.S. 451, (1992) …………………………………………………………..     **13**

*Etienne v. Spanish Lake Truck and Casino Plaza, LLC,*
    778 F.3d 473, (5th Cir. 2015) …………………………………………………..     **10**

*Harbor Tug & Barge Co. v. Papai,*
    520 U. S. 548, (1997) …………………………………………………………..     **10**

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,*     **18, 19,**
    565 U.S. 171, (2012) …………………………………………………………...     **20, 21**

*Jackson v. Biedenharn,*
   429 F. App'x 369, (5th Cir. 2011) …………………………………………….. **16**

*Jackson v. Tyler's Dad's Place, Inc.,*
   850 F. Supp. 53, (D.D.C. 1994) ……………………………………………… **18**

*LaPierre v. Benson Nissan, Inc.,*
   86 F.3d 444, (5th Cir. 1996) ………………………………………………… **18**

*Lubavitch-Chabad of Ill., Inc. v. Northwestern Univ.,*
   772 F.3d 443, (7th Cir. 2014) ……………………………………………… **11**

*McCrary v. Runyon,*
   515 F.2d 1082, (4th Cir. 1975) ……………………………………………… **9**

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973) ………………………………………………………… **13**

*Mills v. Warner-Lambert Co.,*
   581 F. Supp. 2d 772, (E.D. Tex. 2008) …………………………………….. **13**

*Morris v. Dillard Dep't Stores, Inc.,*                                    **15, 16,**
   277 F.3d 743, (5th Cir. 2001) ……………………………………………… **17**

*Morris v. Office Max,*
   89 F.3d 411, (7th Cir. 1996) ……………………………………………….... **17**

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
   591 U.S. 732, (2020) ………………………………………………………… **19**

*Owens v. Circassia Pharmaceuticals, Inc.,*
   33 F.4th 814, (5th Cir. 2022) ……………………………………………… **18**

*Patel v. Midland Mem'l Hosp. & Med. Ctr.,*
   298 F.3d 333, (5th Cir. 2002) …………………………………………….. **12**

*Phelps v. Wichita Eagle-Beacon,*
   886 F.2d 1262, (10th Cir. 1989) ………………………………………….. **16, 17**

*Ross v. Metro. Church of God,*
   471 F. Supp. 2d 1306, (N.D. Ga 2007) …………………………………… **18**

*Runyon v. McCrary,*
   427 U.S. 160, (1976) ……………………………………………………… **8, 9**

*Saint Francis College v. Al-Khazraji,*
    481 U.S. 604, (1987) ……………………………………………    **9**

*San Francisco Zen Ctr., Inc.,*
    2024 U.S. App. LEXIS 17536 (9th Cir. July 17, 2024) …………………………    **21**

*Shaliehsabou v. Hebrew Home of Greater Wash., Inc.,*
    363 F.3d 299, (4th Cir. 2004) ……………………………………..    **19**

*St. Mary's Honor Ctr v. Hicks,*
    509 U.S. 502, (1993) ……………………………………………    **18**

*U.S. v. 92,203.00 in United States Currency,*
    537 F.3d 504, (5th Cir. 2008) …………………………………..    **13**

*Wilson v. Wilson v. Pepsi Bottling Grp., Inc.,*
    609 F. Supp. 2nd 1350, (N.D. Ga. 2009) ……………………………    **14**

## STATUTES                                                     PAGE

42 U.S.C. §1981 ……………………………………………    **7, 8, 9,**
                                                                **10, 11,**
                                                                **13, 15,**
                                                                **16, 17,**
                                                                **18, 19,**
                                                                **22**
42 U.S.C. §1981(a) …………………………………………..    **8**

## RULES                                                        PAGE

Fed. R. Civ. P. 56(a) ………………………………………    **8**

Fed R. Evid (801 (c) ………………………………………    **13**

## IV. STATEMENT OF FACTS

Defendant is a Christian faith-based franchisor of auto repair stores. (Ex.A:7). It requires all franchisees to be Christian to carry out its faith-based mission of sharing Jesus Christ with others and living out Christ's teachings in business and each store's community. (Ex.A:36-37) (Ex.B:15-16; 9-14). Defendant makes this known to the public through its website (Ex.B:2-16), branding, motto, mission statement and its name. (Ex.A:9-23).

Defendant makes no exceptions: all approximately 250 franchisees are Christians. (Ex.A:33-35). No non-Christians have ever been offered a franchise agreement in Defendant's more than 40 years existence. (Ex.A:21,37). Defendant has franchise agreements with diverse races including with franchisees of Jewish ethnicity but Christian in faith. (Ex.A:38-39;57-60).

Brandon Thomas was part of Defendant's team responding to over 1200 online inquiries annually. (Ex.A:62-63;114). He followed a manual detailing an eight-step discovery process and a list of key franchisee characteristics to screen leads. (Ex.A: 21;64;105-106).

Between September 28 and November 17, 2020, Thomas had four substantive phone calls with Plaintiff. (Ex.A:85-86). Step 1 is a "get to know you" conversational one hour call. (Ex.A:65;106-07). Step 2 is a call to walk through the Brand Review brochure. (Ex.A:66;108). Step 3 is a review of a questionnaire completed by the prospect. (Ex.A:67;109).

Plaintiff passed Step 3. (Ex.A:92-94). After Plaintiff told Thomas he was a man of Jewish faith (Doc.09:7), Thomas made a fourth call to advise that the process was ending. (Ex.A:83-84). Plaintiff was not Christian and thus not qualified as a franchisee. (Ex.A:83;92;95). White non-Christians have had their calls ended for the same reason. (Ex.A:36-37;80-82). Plaintiff alleges it was not his Jewish faith that ended the process, but his Jewish race. (Doc.09:16). His testimony differs: "I think it was against the law for them to only work with Christians." (Ex.C:119-127).

Plaintiff did not make it to Step 4, to have preliminary conversations regarding store location, funding and financial information. (Ex.A:93-96;110-11). Plaintiff did not have a Step 5 review to learn about any of the terms and deal points of franchising. (Ex.A:69;112). Nor did he make it to Step 6 "discovery day" at the corporate office. (Ex.A:93-97). This involves in-depth interviews after which the executive team votes to offer a franchise agreement. (Ex.A:70-72). Of the over 1200 leads in 2020, only 24 made it past Step 8to a franchise agreement and funding their store. (Ex.A:114-15).

## V.  SUMMARY OF THE ARGUMENT

Plaintiff's lawsuit is a religious discrimination claim masquerading as race discrimination. Because it is not unlawful under §1981 to make associational decisions based on shared religious belief, Plaintiff's claims fail as a matter of law.

**<u>No prima facie case</u>.** §1981 does not apply to Defendant's screening process, or exclusive, associational decisions based on race-neutral criteria. A contract was not available, and Plaintiff did not lose an actual contract interest. Plaintiff asserts a speculative loss of a future possible contract which is insufficient. There is no evidence that white non-Christians were treated more favorably than Plaintiff as a Jewish non-Christian.

**<u>No but-for causation or pretext</u>.** Defendant has agreements with franchisees of Jewish ethnicity who are Christian, so there is no evidence of race bias. No one (white or any race) who professes to be a non-Christian has ever been offered a franchise agreement. Every franchisee is a Christian. Defendant's Christian faith precondition for franchisees is a lawful, race-neutral criterion and conclusively proves (a) the validity of Defendant's faith-based reasons for ending Plaintiff's inquiry, and (b) Defendant would make the same decision regardless of ethnicity. Christians are among all races. Defendant ends inquiry calls and declines franchise agreements to

white non-Christians. Plaintiff cannot prove, as a matter of law, that race—not religion—is the but-for cause of his inquiry ending or his not owning a franchise, nor can he prove pretext because Defendant's reasons are not false.

**Ministerial exception**. Plaintiff's claims are barred by the First Amendment, which applies to Defendant's selection of franchisees to carry out its faith-based mission. The First Amendment prevents §1981 from infringing on Defendant's religious freedom in selecting franchisees.

## VI.   LEGAL ARGUMENT

Summary judgment applies where pleadings and evidence show "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A.  §1981 inapplicable.

### (1) Religious discrimination not actionable.

Plaintiff told Defendant of his Jewish faith over three preliminary calls. (Doc.09:6-7). Defendant ended the inquiry because it only offers franchise ownership to Christians who are entrusted with carrying out Defendant's Christian faith-based mission. (Ex.A:83). Plaintiff sued under 42 U.S.C. §1981 for race discrimination based on his Jewish ethnicity. (Doc.09:18-28). Defendant never knew he was ethnically Jewish, only that he was of Jewish faith. (Ex.A:87-88).

"Congress passed the Civil Rights Act of 1866 in the aftermath of the Civil War to vindicate the rights of former slaves." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media,* 140 S. Ct. 1009, 206 L. Ed. 2d 356 (2020). Section 1981(a) of that statute only prohibits race discrimination by mandating "all persons… have the same right… to make and enforce contracts… as is enjoyed by *white* citizens…" 42 U.S.C §1981(a).

The gravamen of Plaintiff's case is religious discrimination, which is not prohibited by §1981. *Runyon v. McCrary,* 427 U.S. 160, 167 (1976). To prevail under §1981, Plaintiff must

"prove that he was subjected to intentional discrimination based on [a protected race], *rather than*… his religion." *Saint Francis College v. Al-Khazraji,* 481 U.S. 604, 613 (1987).

### (2) §1981 inapplicable to associational contracts.

§1981 does not reach associational contractual relationships such as those between Defendant and its franchisees who associate for shared religious beliefs:

> …where the offeror selects those with whom he desires to bargain on an individualized basis… there is reason to assume that, although the choice made by the offeror is selective, it reflects "a purpose of exclusiveness" other than the desire to bar members of [a protected] race. Such a purpose, certainly in most cases, would invoke associational rights long respected.

*Runyon v. McCrary,* 427 U.S. 160, 186-88 (1976). "Private associations having non-racial criteria for the selection of members may apply their criteria" without violating §1981. *McCrary v. Runyon,* 515 F.2d 1082, 1088 (4th Cir. 1975).

Defendant's Christian selection criterion is non-racial. (Ex.A:38-39). It is applied for a religious associational "purpose of exclusiveness" to fulfill a faith-based mission. (Ex.A:40-53). Defendant's franchisee criterion does not prevent those of Jewish race/ethnicity ("ethnicity") from owning a franchise. (Ex.A:58-61). Defendant contracts with franchisees of Jewish ethnicity and non-white individuals, all who are Christian. (Ex.A:38-39).

### B. §1981 elements.

A §1981 claim for contractual race discrimination requires proof that (1) Plaintiff is in a racial class protected by §1981; (2) Defendant intended to discriminate based on race; and (3) the discrimination concerned an activity enumerated in §1981. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.,* 869 F.3d 381, 386 (5th Cir. 2017), cert. denied, 583 U.S. 1120 (2018), citing *Bellows v. Amoco Oil Co.,* 118 F.3d 268, 274 (5th Cir. 1997).

And (4) "a plaintiff must… prove that, but-for race, it would not have suffered the loss of a legally protected right." *Comcast,* 140 S. Ct. at 1020.

### (1) No evidence: but-for causation (element 4)

#### (a) <u>Same decision test.</u>

In all cases, "a plaintiff bears the burden of showing that race was a but-for cause of [the] injury" to establish a §1981 claim.[1] *Comcast*, 140 S. Ct. at 1014. But-for causation is sometimes called the "same decision" test. A defendant can "prevail on summary judgment" by showing "that any reasonable jury would conclude [defendant] would have made the same decision absent the [alleged] discrimination." *Etienne v. Spanish Lake Truck and Casino Plaza, LLC,* 778 F.3d 473, 476 (5th Cir. 2015).

Courts ask "what would have happened if the plaintiff had been white?" "If the defendant would have responded the same way to the plaintiff even if he had been white" then a §1981 claim cannot lie. *Comcast*, 140 S. Ct. at 1015. Defendant has no white non-Christian franchisees proving a white non-Christian will not qualify as a franchisee any more than a Jewish non-Christian. (Ex.A:36-37). On this evidence, a reasonable jury could only conclude Defendant would make the same decision to end the calls of a white non-Christian as it made for Plaintiff as a Jewish non-Christian. (Ex.A:90-91).

#### (b) <u>Only one conclusion on causation.</u>

"[S]ummary judgment… is mandated where the facts and the law will reasonably support only one conclusion." *Harbor Tug & Barge Co. v. Papai,* 520 U. S. 548, 554 (1997). Brad Fink's Declaration that all franchisees are and must be Christians is undisputed. (Ex.A:33-35; 38). It is

---

[1] In *Comcast*, the Supreme Court rejected use Title VII's "motivating factor" causation test. Allegations are insufficient if they show that Plaintiff's Jewish ethnicity played only a part in Defendant's decision.

consistent with other compelling indicators detailed in (Ex.A:7-23) that Defendant's faith-based mission requires all franchisees to be Christian so that they can be a spiritual light in their communities by spreading the message of Jesus Christ to guests, employees, and communities members.  (Ex.A:48-53).

On these and other facts in (Ex.B:1-21), no reasonable jury could find that being a Christian is not a requirement for franchise ownership or that the but-for causation standard is met.

Like Plaintiff, the Jewish litigant in *Lubavitch-Chabad of Ill., Inc. v. Northwestern Univ.,* 772 F.3d 443, 446 (7th Cir. 2014) shoehorned his religious discrimination disaffiliation allegations into a §1981 race claim.  The court saw through it, upholding summary judgment because discrimination on plaintiff's Jewish ethnicity "would hardly be plausible" since the defendant proved it *did* affiliate with Jews who shared its religious beliefs, just as Christian Brothers does.

**(2) No evidence of intentional discrimination (element 2).**

**(a) <u>No knowledge of ethnicity.</u>**

Intentional discrimination cannot be proven if Defendant was unaware of Plaintiff's Jewish ethnicity. Plaintiff only alleges Defendant knew Plaintiff's *faith* was Jewish. (Doc.09:7). There is no evidence Brandon Thomas or Brad Fink had knowledge of Plaintiff's Jewish ethnicity. (Ex.A:87-88). Only unalleged conjecture. The only context for use of "Jewish" by *both* Defendant and Plaintiff is *faith*, not ethnicity:

> Plaintiff was contacted for an initial call… Thomas… asked several personal questions. One question… was whether [Plaintiff] was a "man of *faith*."

> Plaintiff sensed that Thomas was a *devout Christian*. Plaintiff volunteered that he was a man of *faith*. Specifically, Plaintiff disclosed that he was *Jewish*. *Plaintiff* then asked Thomas if Plaintiff's *Jewish faith* would be a problem or disqualify him from owning a Christian Brothers franchise.

(Doc.09:6-7). Plaintiff did not ask if his Jewish *ethnicity* would be a problem: he only asked about Jewish *faith* which does not imply the same ethnicity. Whites can be Jewish in faith. Plaintiff's father's race is white, but Jewish in faith. (Ex.C.147:25, 148:1-12, 149:8-15).

### (b) No discrimination: Plaintiff's sole reliance on an alleged statement by Thomas is implausible, not probative or admissible.

In the face of this, Plaintiff relies solely on one alleged statement by a non-decisionmaker (Brandon Thomas) which is neither probative nor admissible. Plaintiff claims Thomas said religion is not an issue to owning a franchise (Doc.09:7). He therefore believes Thomas was referring to race when later Thomas allegedly said the discovery process was ending because Plaintiff is "Jewish." (Doc.09:15-16). Even if made, the statement is demonstrably false: it contradicts forty years of Defendant's precedent and pre-existing published criteria declaring that Christian faith is the "key characteristic" for franchisees. (Ex.A:18, 21, 33, 35) (Ex.B:15-16).

Defendant's website (Ex.B:1-16), its name and countless other indicators confirm Christianity has always been central to Defendant's identity. See details in (Ex.A:7-22). Plaintiff knew this (Ex.C:115:4-5) and concedes Defendant is a faith-based business. (Doc.09:28).

Regardless, Thomas' alleged statement is not probative because Thomas is not the relevant decisionmaker for Defendant. *Patel v. Midland Mem'l Hosp. & Med. Ctr.,* 298 F.3d 333, 344 (5th Cir. 2002) ("To be probative, allegedly discriminatory statements must be made by the relevant decisionmaker.").. The implausible "religion doesn't matter" statement was allegedly made in a Step 1 screening call. (Doc.09:6-7). Thomas has no authority to change forty years of policy requiring franchisees be Christians. (Ex.A:104). He is not authorized to select franchisees. (Ex.A:104). Plaintiff concedes Thomas is not a decisionmaker. (DOM-87:18-19).

This sole statement therefore cannot create a fact issue to defeat summary judgment against undisputed evidence (and lack of evidence) negating key elements of Plaintiff's case. "[O]nly

reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.,* 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 469 n.14 (1992).

Finally, Thomas' statements are hearsay and inadmissible at summary judgment. *U.S. v. 92,203.00 in United States Currency,* 537 F.3d 504, 508 (5th Cir. 2008); Fed.R.Evid. 801(c).

**(3) Plaintiff's activity not enumerated in §1981.**

Plaintiff's three calls with Defendant were not contractual such to be actionable under §1981. They were informational screening of a lead not a negotiation. (Ex.A:62-65). As shown in prima facie element (2), *infra* C.2, Plaintiff's calls were not an activity enumerated in §1981 and did not involve the making of a contract. *Body by Cook, Inc.,* 869 F.3d at 386.

Summary judgment is required as there is no evidence for three of the four §1981 elements.

**C.  No prima facie case.**

"The analysis of discrimination claims under §1981 is identical to the analysis of Title VII claims." *Body by Cook,* 869 F.3d at 386. §1981 claims are analyzed by applying the *McDonnell Douglas* burden-shifting framework to evaluate whether the allegations create a viable discrimination claim. *Belton v. Geo Grp., Inc.,* 2021 U.S. App. LEXIS 36150, *8-9; (5th Cir. 2021), citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

Plaintiff must show proof of four prima facie elements: (1) membership in a protected class; (2) that he *sought* and was *qualified* to receive an *available* contract; (3) that his *contract proposal was rejected* or he *received a contract* on unfavorable terms; and (4) similarly-situated individuals not in the protected class received a contract. *Body By Cook,* 869 F.3d at 387 and n.1 (emphasis added).

Defendant is entitled to judgment as a matter of law. Plaintiff cannot meet its burden for elements 2, 3 and 4.

**(1)     Element 4: no similarly-situated comparator.**

Fatal to Plaintiff's case is the lack of proof that he was treated less favorably than others similarly-situated outside of his protected class. *Alkhawaldeh v. Dow Chem. Co.,* 851 F.3d 422, 426 (5th Cir. 2017) (summary judgment, no similarly-situated comparator); *Autry v. Fort Bend Indep. Sch. Dist.,* 704 F.3d 344, 346-47 (5th Cir. 2013) (same).

To satisfy this element, Plaintiff needs proof that non-Christian whites received a contract while Plaintiff did not. (Ex.A:37;101). There is no such proof as all franchisees are Christians. (Ex.A:33).

When a plaintiff fails to show he "was treated differently from similarly-situated applicants outside the protected class" the defendant "is entitled to summary judgment for that reason alone." *Wilson v. Wilson v. Pepsi Bottling Grp., Inc.,* 609 F. Supp. 2nd 1350, 1367 (N.D. Ga. 2009) (summary judgment: plaintiffs "made no effort" to "show membership criterion" was applied to plaintiff "but not to one or more applicants outside the protected class who were admitted" to business association). See also *Body By Cook,* 869 F.3d at 387 and n.1 (same).

**(2)     Element 2: no evidence Plaintiff was qualified, a contract was available, Plaintiff lost an actual contract interest, or that he attempted a contract.**

**(a)  <u>Plaintiff not qualified</u>.**

Plaintiff as a non-Christian was not qualified to be a Christian Brothers franchisee. (Ex.A:36-37;92,95). The Christian faith requirement is on Defendant's franchisee webpage (Ex.A:21; Ex.B:15-16) and is proven by all franchisees being Christians. (Ex.A:33). This alone defeats Element 2.

**(b)  <u>No evidence of available contracts, only speculation.</u>**

The record is devoid of any *available* contract. (Ex.A:99). Plaintiff does not allege any specific contract or store was available in relation to his inquiry. (Doc.09:27). In fact, the record shows there was no contract or store available on which an offer could be made. (Ex.A:99-103)(Ex.B:18).

Plaintiff's allegations are speculative: "but for Defendant's unlawful discrimination, Plaintiff would *today*… own a Christian Brothers franchise." (Doc.9:27). Uncontroverted data shows Plaintiff had no more than a 1.86% probability of owning a franchise even if he was a Christian: only 24 of the 1289 inquiries received in 2020 resulted in franchise agreements. (Ex.A:114-15).

Even if a site had been identified in 2020, its availability would be at least 18 to 24 months away (Ex.A:103)(Ex.B:19-20) making it speculative as to a prospective possible interest.

A "plaintiff must establish the loss of an actual, not speculative or prospective, contract interest" for an actionable §1981 claim. *Morris v. Dillard Dep't Stores, Inc.,* 277 F.3d 743, 751-52 (5th Cir. 2001) (affirming dismissal of §1981 claim alleging only "possible loss of future opportunities"). "Without any evidence of a tangible contract interest, any potential contract that [plaintiff] might have entered into is at most prospective and speculative and thus cannot form the basis of a §1981 claim." *Bellows,* 118 F.3d at 274.

### (c) No actual contractual interest lost.

There is no evidence of an enforceable contract or a specific proposal for one to give rise to an actual contractual interest. Plaintiff only participated in three phone calls and filled out some nonbinding forms. (Ex.A:65-68;85). Nothing specific was offered or proposed by either side, no location specified, no start date, price, financing, leasing or any other terms and conditions related to purchasing a franchise. (Ex.A:96-98). Plaintiff did not know even the most basic information

about franchise terms because he had not seen, nor had he asked for, the franchise agreement (Ex.B:73-78) required to buy a franchise. (Ex.C.127:12-17).

Prospects like Plaintiff have no contractual interest at Steps 3 and 4 while their inquiry is being screened. (Ex.A:92-94;96-98). At best the first actual contract interest arises in Step 7 and 8 when a prospect signs a letter of acknowledgement (Ex.B:79-84) and pays the initial franchise fee. (Ex.A:113). Even then, the actual franchise agreement is often not signed until 2-3 years after Step 8. (Ex.A:73-76). Plaintiff's inquiry ended before Step 4 was complete and long before Step 7 or 8 ever occurred, so he clearly had no actual contract interest. (Ex.A:93-95).

Expulsion from private school or job firing are examples of losing an actual contract interest. *Phelps v. Wichita Eagle-Beacon,* 886 F.2d 1262, 1267 (10th Cir. 1989). The §1981 claim in *Phelps* was dismissed because claiming "possible loss of future opportunit[y]" was a "vague and conclusory allegation insufficient to state a deprivation of the right to make and enforce contracts that is protected by Section 1981." *Id.*

Plaintiff's allegations are no better. Plaintiff was not fired and he had no contract. (Ex. A:98). He had no right to force Defendant to continue screening his inquiry any more than Defendant could force him to continue having calls.

Where, as here, there are no tangible contractual terms being discussed, the Fifth Circuit held that a §1981 claim fails as a matter of law. *Jackson v. Biedenharn,* 429 F. App'x 369, 371-72 (5th Cir. 2011). "We have expressed doubt whether §1981 extends to an action against a party with whom the defendant has not contracted or sought to contract." *Id.,*

Defendant simply advised it was not going to continue the calls. (Ex.A:83). Plaintiff had no awareness of even basic contractual terms, much more at draft of a contract or term sheet. (Ex.C.127:12-17). This is analogous to Dillard's banning the *Morris* plaintiff from their store. The

Fifth Circuit found this to be "insufficient to constitute the loss of an actual contract interest." *Id.,* citing *Phelps,* 886 F.2d at 1267.

### (d) <u>No attempt to contract</u>.

To survive summary judgment on a §1981 claim, there must be proof of "an actual attempt to contract" that was "actually prevented, and not merely deterred." *Arguello v. Conoco, Inc.,* 330 F.3d 355, 358-59 (5th Cir. 2003) quoting *Morris,* 277 F.3d at 752.

Plaintiff was in early stages of inquiring about franchise opportunities; akin to "kicking tires" at a car lot or browsing merchandise. None of which is contractual activity protected by §1981. Plaintiff characterizes his calls as a "qualifying process" (Doc.09:9-10) not an attempt to contract. There was no negotiating or exchange of terms, just conversation and an exchange of information. (Ex.A:98).

During screening Plaintiff never saw a franchise agreement (Ex.C.127:12-17) or a Franchise Disclosure Document (FDD). (Ex.A:97;112). An FDD, which includes detail points, terms and information that must only be disclosed when a prospect is beginning to buy a franchise, is not introduced until Step 5. Ex.A:69. Not having completed Steps 3 or 4 (Ex.A:93-94), Plaintiff was nowhere near buying or attempting to buy. (Ex.A:96,98-99).

"Shopping" in §1981 retail cases is comparable. Two plaintiffs considering a purchase were offended, perceiving race discrimination when confronted by security. They left and did not do business with the retailer, then sued. The court held that:

> …because they did not attempt to make any further purchases, Morris and Nailor never sought to enter into a contractual relationship with Office Max. Their allegation that Office Max interfered with their "prospective contractual relations" is speculative and insufficient to state a claim under §1981.

*Morris v. Office Max,* 89 F.3d 411, 414 (7th Cir. 1996) (summary judgment: no evidence of interference with making of a contract). Talking through three screening calls is far less than the

Office Max shoppers who were in the store but skipped the check out. (Ex.A:85). *Jackson v. Tyler's Dad's Place, Inc.,* 850 F. Supp. 53, 56 (D.D.C. 1994) (no discrimination, plaintiffs "never asked to be seated during the second visit," so "never sought to enter a contractual relationship on that occasion").

**(3) Element 3: no contract proposal.**

There is no evidence either party made a contract proposal or rejected one. (Ex.A:96,98). Nor is there evidence Plaintiff received a contract on unfavorable terms from Defendant.

There is no evidence for three of four elements of Plaintiff's prima facie case, meaning no discrimination inference. The Court could grant summary judgment on that alone. *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 (5th Cir. 1996).

**D.    <u>Plaintiff cannot prove pretext.</u>**

Defendant is entitled to summary judgment because Plaintiff has no evidence Defendant's Christian belief requirement is false or pretextual. *St. Mary's Honor Ctr v. Hicks,* 509 U.S. 502, 515-17 (1993). Defendant's Christian requirement that screened Plaintiff out is not false: all franchisees are Christians. (Ex.A:33). Without proof of falsity it is impossible for a reasonable jury to find pretext. *Owens v. Circassia Pharmaceuticals, Inc.,* 33 F.4th 814, 826 (5th Cir. 2022) (§1981 claim failed, pretext evidence insufficient to overcome no similarly-situated comparator).

**E.    <u>Ministerial exception bars § 1981 claim.</u>**

The ministerial exception bars §1981 claims against religious entities. *Ross v. Metro. Church of God*, 471 F. Supp. 2d 1306, 1311 (N.D. Ga 2007). This exception protects "freedom of a religious organization to select its ministers." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,* 565 U.S. 171, 188, (2012). The First Amendment prohibits "interfer[ence] with the freedom of religious groups to select their own [ministers]," *Id.* at 184, affording religious entities

broad freedom to choose "who will preach their beliefs, teach their faith, and carry out their mission." *Id.* at 196.

"The ministerial exception was recognized to preserve a church's independent authority" "to select… a minister without interference by secular authorities." *Our Lady of Guadalupe Sch. v. Morrissey-Berru,* 591 U.S. 732, 747 (2020). "Requiring a church to accept… an unwanted minister... depriv[es] the church of control over the selection of those who will personify its beliefs." *Hosanna,* at 188.

The exception applies to protect Defendant's right as a faith-based organization whose "mission is marked by clear or obvious religious characteristics." *Shaliehsabou v. Hebrew Home of Greater Wash., Inc.,* 363 F.3d 299, 310 (4th Cir. 2004). The term "religious institution" includes "religiously affiliated… corporations" which "can provide secular services and still have substantial religious character" for ministerial exception purposes. *Id.*

For-profit secular businesses receive similar protection if "religion plays an important role" even if it "is not the sole mission of the organization." *Braidwood Mgmt. v. EEOC,* 70 F.4th 914, 939-40 (5th Cir. 2024) (discrimination barred against business' religious-based hiring practices by RFRA, statutory equivalent of ministerial exception). For example, in *Braidwood*, an owner of "Christian" businesses was protected from Title VII liability for not hiring persons who engage in practices protected by Title VII which were contrary to his religious beliefs. *Braidwood,* 70 F.4th at 922.

The exception bars Plaintiff's §1981 claim because Defendant's faith-based mission has been clear *and* obvious in its name and by describing itself as a "business-focused company applying strong Biblical principles to the auto repair industry." (Ex.A:18) (Ex.B:8). Its mission statement is "We seek to glorify God by providing ethical and excellent automotive repair service

for our customers." (Ex.A:11)(Ex.B:40). Defendant publicizes Matthew 22:39 "love your neighbor as yourself" as its Guiding Value. (Ex.A:14)(Ex.B:3). Its website seeks franchisees "who have made their faith a central part of their lives" (Ex.A:21)(Ex.B:15-16) and proclaims "the teachings of Christ have informed how we do business for more than 40 years." (Ex.A:21)(Ex.B:15-16).

 "Plaintiff acknowledges that Christian Brothers is a faith-based business." (Doc.09:28).

Under the First Amendment, "[t]he religious are entitled to substantial deference when claiming obstruction of their religious exercise" and when characterizing their business as faith-based. *Braidwood,* 70 F.4th at 937, n.51. A religious entity's "choice of representative" is similarly a decision to which the courts "would simply defer without further inquiry." *Bollard v. California Province of the Soc'y of Jesus,* 196 F.3d 940, 947 (9th Cir. 1999).

There is no "rigid formula" to determine roles to which the ministerial exception applies. *Hosanna-Tabor,* 565 U.S. at 190. It applies to lay persons in faith-based organizations who perform "vital religious duties" at the core of the religious entity's mission. *Our Lady of Guadalupe*, 591 U.S. at 734; *Hosanna-Tabor,* 565 U.S. at 190.

The *Braidwood* Court relied on *Boy Scouts of Am. v. Dale,* 530 U.S. 640 (2000) in granting summary judgment for "religious-business-type-employers" on substantially similar issues as presented here. It found the business was engaged in expressive association and had a right to not associate with persons engaging in conduct incompatible with its religious beliefs. *Braidwood,* 70 F.4th at 923. Defendant claims the same protection to not associate with non-Christian franchisees so it can associate with franchisees of like religious beliefs for its Christian mission.

Defendant's mission depends on Christian franchisees to exemplify Christian principles and teachings. (Ex.A.40-47). Christian franchisees are spiritual leaders to guests, employees and others by being a spiritual mentor, praying together, leading Bible studies, sharing the Gospel and

personal testimonies, evangelizing and encouraging acceptance of Jesus Christ as lord and savior. (Ex.A:48-53).

The vital religious role of Defendant's franchisees exceeds that found sufficient elsewhere. Summary judgment was upheld barring ADA claims of a "Work Practice Apprentice" (WPA) who did not teach or lead and mostly did menial cleaning. *Behrend v. San Francisco Zen Ctr., Inc.,* 2024 U.S. App. LEXIS 17536 *9-10 (9th Cir. July 17, 2024). The exception applied because the religious entity explained the WPA's work was worship that played a "role in ... carrying out [a religious] mission." *Id.* Defendant similarly shows its franchisees are engaged in religious expression by integrating their faith and Biblical principles into work. (Ex.A:40-53).

*Behrend* illustrates courts defer to religious entities' views: a "religious institution's explanation" of how the ministerial role is vital to "the life of the religion in question is important." *Our Lady of Guadalupe,* 591 U.S. at 757; *Hosanna-Tabor,* 565 U.S. at 194. The franchisees' religious activities are vital to Defendant's faith-based mission (Ex.A:40-47) justifying the ministerial exception barring Plaintiff's claims.

### VII. Conclusion & Prayer for Relief

Plaintiff's lawsuit puts Defendant on the horns of dilemma. Either risk suit for $2 million by adhering to Defendant's long-standing, Christian faith-based mission or continue all eight steps with Plaintiff despite recognition by both parties after three calls that Plaintiff was not a spiritually aligned Christian, which would impede Defendant from carrying out its faith-based mission and violate its First Amendment protection and freedom of religious association.

Plaintiff admitted he fell short of Defendant's expectations for franchisees carrying out the faith-based mission. Would he be unqualified if he could not share with others about Jesus as his personal savior? Plaintiff answered "from a qualification standpoint… that's correct, but… I was

open to having pamphlets or brochures or stuff on the walls…" (Ex.C.122:1-25). If *he* might be fine with pamphlets, what if Defendant is not fine, and wants personal Christian outreach? Plaintiff was perplexed: "Yeah, to this point, I—I haven't. That hasn't been a thought process… But if that's an issue for them, I – I don't know." (Ex.C.123:1-25; 124:1-21).

Defendant should not be put to expense of trial to defend further when §1981 does not apply to Plaintiff's allegations of religious discrimination, and the record is devoid of any plausible allegation of racial discrimination. For the foregoing reasons, Defendant prays for final summary judgment on all claims and defenses and for other and further relief under the law and in equity.

Respectfully submitted,

/s/ Scott A. Agthe
Scott A. Agthe
State Bar No. 00934800
PIERSON FERDINAND LLP
3801 N. Capital of Texas Highway
Ste. E240, #431
Austin, Texas 78746
scott.agthe@pierferd.com
(512) 905-2593 Telephone
(512) 717-7745 Facsimile
**Attorneys for Christian Brothers**
**Automotive Corporation**

## CERTIFICATE OF COMPLIANCE

I hereby certify that, in accordance with the Briefing Requirements in Section 16(c) of this Court's procedures, this document contains 4991 words as determined by Microsoft Word for Office 365, which is the software used to generate the document. This word count does not include words contained in the sections of this motion excluded from the word limit by Section 16(c).

/s/ Scott A. Agthe
Scott A. Agthe

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2024, the foregoing Defendant's Motion for Final Judgment was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all known counsel of record.

*/s/ Scott A. Agthe*
Scott A. Agthe

**APPENDIX OF EXHIBITS IN SUPPORT OF**
**DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT**

---

Defendant Christian Brothers Automotive Corporation ("Defendant") submits its

Appendix of Exhibits in Support of its Motion for Final Summary Judgment as follows:

| EXHIBIT | DOCUMENT DESCRIPTION |
|---|---|
| A | Declaration of Brad Fink |
| B | Documents MSJ-001 through MSJ-084 |
| C | Evan Domanic's Deposition Excerpts |