UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVAN DOMANIC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-CV-00386 |
| | § | |
| CHRISTIAN BROTHERS | § | |
| AUTOMOTIVE CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Evan Domanic alleges that routine franchise negotiations with Defendant Christian Brothers Automotive Corporation ("Christian Brothers Auto") ended in unlawful discrimination when the company learned that he is Jewish. Christian Brothers Auto counters that it ended discussions not because Domanic is ethnically Jewish, but because he does not share the company's Christian faith. Domanic sued under 42 U.S.C. § 1981, alleging race-based discrimination.

Before the Court are two motions: Christian Brothers Auto's Motion for Summary Judgment on Domanic's racial-discrimination claim, (Dkt. No. 42), and its Motion to Strike or Exclude Expert Testimony, (Dkt. No. 43). For the reasons below, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Dkt. No. 42).

The Court did not consider or rely on the challenged expert testimony in its summary-judgment analysis. The Motion to Exclude, (Dkt. No. 43), is therefore **DENIED as moot**.

I.   **BACKGROUND**[1]

Evan Domanic first encountered Christian Brothers Auto when he visited one of its auto-repair shops for service. (Dkt. No. 44-1 at 9–11). Impressed by the experience, he applied to open his own Christian Brothers Auto franchise. (*Id.*); (*see* Dkt. No. 42-2 at 24–25).

Domanic quickly learned that the application process is rigorous. Christian Brothers Auto uses an eight-step interview framework, divided into three broad phases: initial vetting, detailed evaluation, and final commitment. (Dkt. No. 42-1 at 12–14, 18–19); (Dkt. No. 42-2 at 18–19, 59). Applicants first submit basic information and participate in introductory calls and presentations (Steps 1–3). (Dkt. No. 42-1 at 12–14, 18–19); (Dkt. No. 42-2 at 18–19, 66–70). As applicants advance, they provide fuller financial disclosures, review legal documents, and attend in-person meetings with senior leadership before executing the franchise agreement (Steps 4–8). (*Id.*).

On top of this demanding process, Christian Brothers Auto imposes one non-negotiable requirement: It only grants franchises to Christians. The company describes itself as a "Christian faith-based franchisor of auto repair stores." (Dkt. No. 42 at 6) (citing Dkt. No. 42-1 at 3). It has granted over 250 franchise contracts to racially and ethnically diverse applicants—including some who are ethnically Jewish—but has never awarded a franchise to a non-Christian. (Dkt. No. 42-1 at 7–8, 10–11).

---

[1]   Except where noted, this Section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant. *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). The Court has not weighed evidence or made credibility findings. *Id.*

Despite this policy, Domanic—who is both ethnically and religiously Jewish, (*see* Dkt. No. 44-1 at 15, 119)—applied around October 1, 2020, to open a franchise in Dripping Springs, Texas, (*id.*at 9–11, 34, 43); (*see* Dkt. No. 42-2 at 24–25). Between October 21 and November 17, 2020, Domanic spoke with Christian Brothers Auto employee Brandon Thomas four times. (Dkt. No. 42-1 at 15). During their first call, Thomas asked whether Domanic was a "man of faith." (Dkt. No. 44-1 at 15). Domanic replied that he was Jewish and then asked if that would disqualify him. (*Id*. at 15–16). Domanic claims that Thomas assured him that his faith would not be an issue. (*Id*. at 16). Christian Brothers Auto maintains that such a statement, if made, contradicted their long-standing policy of only partnering with Christians. (Dkt. No. 42 at 12) (first citing Dkt. No. 42-1 at 4–5, 7; and then citing Dkt. No. 42-2 at 16–17); (Dkt. No. 42-2 at 9).

Domanic advanced to Step 3 of the application process by November 4, 2020. (*See* Dkt. No. 42-1 at 12, 15–17, 19). Two weeks later, on November 17, Thomas informed Domanic that the application process was ending. (*Id.* at 15).

The Parties dispute the reason Thomas gave. Domanic contends that Christian Brothers Auto ended the process because he is ethnically Jewish. (Dkt. No. 42-3 at 13–14); (Dkt. No. 9 at 4). Christian Auto Brothers counters that any reference to Domanic's Jewish identity concerned his religion—not his ethnicity. (Dkt. No. 42 at 11–12) (first citing Dkt. No. 9 at 2; and then citing Dkt. No. 42-3 at 15–16).

Roughly 15 months later, Domanic sued Christian Brothers Auto under 42 U.S.C. § 1981, alleging race-based discrimination. (Dkt. No. 1). Christian Brothers Auto moved to dismiss. (Dkt. No. 12). This Court denied the motion, holding that Domanic plausibly

3

stated a claim under 42 U.S.C. § 1981. (Dkt. No. 16). After discovery, Christian Brothers Auto moved for summary judgment, (Dkt. No. 42), and to exclude expert testimony, (Dkt. No. 43). Domanic responded to both motions. (Dkt. No. 44) (Motion for Summary Judgment response); (Dkt. No. 45) (Motion to Strike response). And Christian Brothers Auto replied. (Dkt. No. 47) (Motion for Summary Judgment reply); (Dkt. No. 48) (Motion to Strike reply).

## II.    LEGAL STANDARD

### A.    SUMMARY JUDGMENT

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's

response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)), *as revised* (July 14, 2017). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

**B.     42 U.S.C. § 1981**

Section 1981 "prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168, 96 S.Ct. 2586, 2593, 49 L.Ed.2d 415 (1976) (citing 42 U.S.C. § 1981); *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609, 107 S.Ct. 2022, 2026, 95 L.Ed.2d 582 (1987) ("Although § 1981 does not itself use the word 'race,' the Court has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts." (citing *Runyon*, 427 U.S. at 168, 174–75, 96 S.Ct. at 2593, 2596–97)); *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 762 (5th Cir. 1986) ("[S]ection 1981 provides a cause of action for public or private discrimination based on race or alienage." (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975))). Put simply, a company may not refuse to enter into a contract based on race. *See Runyon*, 427 U.S. at 170–71, 173, 96 S.Ct. at 2594, 2596; *Faraca v. Clements*, 506 F.2d 956, 958 (5th Cir. 1975).

To establish a Section 1981 claim, a plaintiff must show that (1) he is a member of a racial minority; (2) the defendant intended to discriminate based on race; and (3) the discrimination concerned one or more of the statute's protected activities—here, contract formation. *Hager v. Brinker Tex., Inc.*, 102 F.4th 692, 700 (5th Cir. 2024).

Beginning with the first, racially or ethnically Jewish individuals are racial minorities for the purposes of Section 1981. As the Supreme Court explained, the statute "protect[s] from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether

6

or not it would be classified as racial in terms of modern scientific theory." *Saint Francis Coll.*, 481 U.S. at 613, 107 S.Ct. at 2028. The question "is not whether Jews are considered to be a separate race by today's standards, but whether" Congress understood them as such when the statute was enacted. *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617–18, 107 S.Ct. 2019, 2022, 95 L.Ed.2d 594 (1987). "It is evident from the legislative history . . . that Jews . . . were among the peoples then considered to be distinct races and hence within the protection of the statute." *Id.* at 617–18, 107 S.Ct. at 2022.

That said, Section 1981 bars discrimination based on race or ethnicity—not religion. *See Saint Francis Coll.*, 481 U.S. at 606, 613, 107 S.Ct. at 2024, 2028; *Runyon*, 427 U.S. at 167, 96 S.Ct. at 2593; *Sibley v. Touro LCMC Health*, No. 24-30189, 2024 WL 5118489, at *4 (5th Cir. Dec. 16, 2024) (per curiam) ("[Section] 1981 'does not protect against religious discrimination.'" (quoting *McCoy v. Homestead Studio Suites Hotels*, 177 F. App'x 442, 445 n.2 (5th Cir. 2006) (per curiam))). A plaintiff must therefore show that the alleged discrimination was based on his racial or ethnic identity, not his religious beliefs. *See Saint Francis Coll.*, 481 U.S. at 613, 107 S.Ct. at 2028; *Shaare Tefila Congregation*, 481 U.S. at 617–18, 107 S.Ct. at 2022.

The plaintiff must also show that the defendant intended to act with racial animus. *Hager*, 102 F.4th at 700. That is, the defendant would have entered into the contract "but for" the plaintiff's race. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341, 140 S.Ct. 1009, 1019, 206 L.Ed.2d 356 (2020).

7

When, as here, the plaintiff lacks "direct evidence of discriminatory intent," courts apply "the McDonnell Douglas[2] burden-shifting framework." *Chacko v. Tex. A&M Univ.*, 960 F.Supp. 1180, 1187 n.1 (S.D. Tex. 1997), *aff'd*, 149 F.3d 1175 (5th Cir. 1998) (per curiam). "That framework . . . proceeds in three steps." *Hager*, 102 F.4th at 699. First, the plaintiff "must establish a prima facie case of discrimination." *Id.* "Second, the burden shifts to the defendant" to articulate "a legitimate, non-discriminatory reason for its conduct." *Id.* "If it does, third, the burden shifts back to the plaintiff" to show that the defendant's stated reason is pretextual. *Id.* At the summary-judgment stage, a plaintiff meets this burden by offering "sufficient evidence to create a genuine issue of material fact" as to whether the proffered reason was pretext for racial discrimination. *Id.* at 704 (quoting *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 349 (5th Cir. 2008)).

## III.   DISCUSSION

Christian Brothers Auto moves for summary judgment on Domanic's Section 1981 claim, which requires him to show that (1) he is racially Jewish; (2) Christian Brothers Auto intentionally discriminated against him because of his race; and (3) the discrimination impaired his right to make contracts. *See Hager*, 102 F.4th at 700. Christian Brothers Auto does not dispute that Domanic is racially Jewish. (*See* Dkt. No. 42 at 11). The only questions, then, are whether a reasonable jury could find that the company discriminated against Domanic because of his race and whether discrimination interfered with his right to contract.

---

[2]   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

8

Because Domanic offers no direct evidence of discriminatory intent, the Court evaluates the record under the *McDonnell Douglas* framework. As explained below, Christian Brothers Auto has offered a credible and—under Section 1981—permissible reason for ending the franchise discussions, and Domanic has not shown that this reason is a pretext for race-based discrimination. Therefore, summary judgment is appropriate. On this record, no reasonable jury could find that Domanic's race, rather than his religion, was the reason he was denied a franchise opportunity.

A.   **PRIMA FACIE CASE**

To establish his Section 1981 claim, Domanic must show that (1) he is a member of a racial minority; (2) Christian Brothers Auto intentionally discriminated against him because of his race; and (3) discrimination impaired his right to contract.[3] *Hager*, 102 F.4th at 700. At the prima facie stage, a plaintiff "is entitled to a presumption of discrimination if he meets the 'minimal initial burden'" of showing these elements. *Cole v. Quality Carriers, Inc.*, No. 23-30556, 2024 WL 937053, at *2 (5th Cir. Mar. 5, 2024) (per curiam) (quoting *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012)). "This burden is 'not onerous.'" *Id.* (quoting *Reed*, 701 F.3d at 439).

---

[3] Christian Brothers Auto argues that Domanic was required to establish four prima facie elements enumerated in *Body by Cook, Inc. v. State Farm Mutual Automobile Insurance*, 869 F.3d 381 (5th Cir. 2017): "(1) membership in a protected class; (2) that he *sought* and was *qualified* to receive an *available* contract; (3) that his *contract proposal was rejected* or he *received a contract* on unfavorable terms; and (4) similarly-situated individuals not in the protected class received a contract." (Dkt. No. 42 at 13) (emphasis in original) (citing *Body by Cook*, 869 F.3d at 387 n.1). This is incorrect. As that same footnote in *Brody by Cook* goes on to explain: "Plaintiffs do not need to satisfy these four elements to successfully plead a § 1981 claim . . . " *Body by Cook*, 869 F.3d at 387 n.1. Rather, these are characteristics of "factual allegations *sufficient* to support a plausible inference of discriminatory intent"—not a list of required criteria. *Id.* (emphasis added).

9

Domanic has satisfied this burden. First, the Parties do not dispute that Domanic is Jewish. (*See* Dkt. No. 42 at 11); (Dkt. No. 44 at 7–8).

Second, "discriminatory motive may be—and commonly is—demonstrated by circumstantial evidence." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017). Here, Domanic disclosed that he is Jewish early in the application process and was rejected just two weeks later. (Dkt. No. 44-1 at 20–21); (Dkt. No. 42-1 at 15). At the prima facie stage, this close temporal proximity supports an inference of causation. *See Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) ("At the prima facie case, a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action."). Accordingly, Domanic has satisfied the second prima facie element.

Third, Domanic has shown that Christian Brothers Auto impaired his right to contract. Christian Brothers Auto argues that Domanic lacked a sufficiently concrete interest in the franchise to support a Section 1981 claim. (*See* Dkt. No. 42 at 13, 15–18). It contends that his alleged contractual interest was too speculative. (*Id.*); *see Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001) (holding that "a plaintiff must establish the loss of an actual, not speculative or prospective, contract interest.").

The Court disagrees. Domanic was not a casual inquirer—he was actively engaged in a multi-step interview process and had completed the first three steps, including detailed applications and multiple lengthy phone calls. (Dkt. No. 44 at 11–13); *see Morris*, 277 F.3d at 752 (noting that courts have recognized a Section 1981 claim when "a customer has engaged in an actual attempt to contract that was thwarted by the

10

[defendant]" (citing cases)).  He intended to complete the process, (*see* Dkt. No. 44-1 at 43), and Christian Brothers Auto had indicated he was a top candidate, (*see id.* at 18, 20). While the company retains discretion in selecting franchisees, (*see* Dkt. No. 42 at 15), the evidence—viewed in the light most favorable to Domanic—supports a reasonable inference that he would have been seriously considered and likely selected but for being Jewish. That interest is concrete enough to make a prima facie showing sufficient to support a Section 1981 claim. The Court thus proceeds to the second step of the *McDonnell Douglas* framework.

## B. LEGITIMATE, NONDISCRIMINATORY REASON

The second step of the *McDonnell Douglas* framework requires the Court to consider Christian Brothers Auto's "alleged non-discriminatory reason for its conduct." *Hager*, 102 F.4th at 701.

Christian Brothers Auto contends that it declined to offer Domanic a francise because of his his religion, not his race. (Dkt. No. 42 at 7). The company emphasizes that it is a "Christian faith-based franchisor of auto repair stores," (*id.* at 6) (citing Dkt. No. 42-1 at 3), and that all of its more than 250 current or former franchisees are Christian, (Dkt. No. 42-1 at 7). Although it has granted franchise rights to racially and ethnically diverse individuals—including some who are ethnically Jewish—it has never offered a franchise to a non-Christian. (*Id.* at 7–8, 10–11).

Based on this evidence, the Court finds that Christian Brothers Auto has articulated a legitimate, nondiscriminatory reason for declining to contract with Domanic: its longstanding policy of offering franchise opportunities only to Christians in

11

alignment with its faith-based mission. (Dkt. No. 42-1 at 8). That justification is permissible under Section 1981.

## C. PRETEXT

Because Christian Brothers Auto has put forward a legitimate, non-discriminatory reason for its conduct, the Court proceeds to the third step of the *McDonnell Douglas* framework, which requires Domanic to present "evidence sufficient to create a genuine issue of material fact" that this non-discriminatory reason is a pretext for racial discrimination. *Fahim*, 551 F.3d at 350–51; *see Hager*, 102 F.4th at 704; *Baldwin v. Univ. of Tex. Med. Branch at Galveston*, 945 F.Supp. 1022, 1031 (S.D. Tex. 1996), *aff'd*, 122 F.3d 1066 (5th Cir. 1997) (per curiam). To do so, Domanic must show that the company's "explanation is false or unworthy of credence," *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003), and that but for his race, Christian Brothers Auto would have entered into a franchise agreement with him, *see Comcast Corp.*, 589 U.S. at 341, 140 S.Ct. at 1019.

Domanic has not met that burden. His primary argument is that discrimination based on his Jewish religion is indistinguishable from discrimination based on his Jewish ethnicity, and that Section 1981 prohibits both. (*See* Dkt. No. 44 at 6, 9–11, 13). The Court disagrees. A plaintiff cannot establish pretext merely by asserting that the employer's stated religious rationale is itself impermissible under Section 1981. That's because Section 1981 prohibits racial discrimination—not religious discrimination. *See Saint Francis Coll.*, 481 U.S. at 606, 613, 107 S.Ct. at 2024, 2028; *Runyon*, 427 U.S. at 167, 96 S.Ct. at 2593; *Sibley*, 2024 WL 5118489, at *4; *Lincoln v. Mendler*, No. 2:18-CV-04542, 2018 WL 4205421, at *3 (E.D. La. Sept. 4, 2018) ("Sections 1981 and 1982 only address racial

discrimination, they do not provide a remedy for religious discrimination."). Instead, Domanic must show that Christian Brothers Auto used religion as a proxy for race.

He has not done so. It is not enough to argue that discrimination based on Judaism as a religion is inherently tied to Jewish ethnicity. (*Contra* Dkt. No. 44 at 10) (arguing Christian Brothers Auto violated Section 1981 because "there is no meaningful distinction between [Domanic's] ethnicity and [his] faith."). Just as Section 1981 distinguishes between race and religion, the Supreme Court distinguishes between Judaism as a religion and being Jewish as an ethnicity. *See Shaare Tefila Congregation*, 481 U.S. at 617–18, 107 S.Ct. at 2022; *cf. Saint Francis Coll.*, 481 U.S. at 613, 107 S.Ct. at 2028 (holding the same with a person of Arab ancestry). As Christian Brothers Auto notes, Domanic's own father is religiously—but not ethnically—Jewish. (Dkt. No. 42 at 12) (citing Dkt. No. 42-3 at 15–17).

Instead, to show pretext, Domanic had to present evidence that (1) the company's stated reason—religious incompatibility—was false, and that (2) the true reason was racial discrimination. He has shown neither. He offers no evidence that Christian Brothers Auto's faith-based policy was a façade selectively enforced to exclude him because of his race. For instance, he identifies no similarly-situated person of a different race who was treated more favorably. Although comparator evidence is not required to show pretext in Section 1981 failure-to-contract case, *see Body by Cook, Inc.*, 869 F.3d at 387 n.1, it would have been especially probative here. To show that Christian Brothers Auto's stated reason (religion) is a cover for racial bias, Domanic could have pointed to someone who shared his religion but not his ethnicity and still received a franchise—evidence that

13

would isolate ethnicity as the deciding factor. But Domanic has produced no such comparator, nor any other evidence sufficient to support an inference of pretext. Indeed, Domanic has offered no evidence that Christian Brothers Auto has ever contracted with a non-Christian of any race or ethnicity.

Domanic points to one alleged statement by a company representative, who told him early in the process that religion would not disqualify an applicant. (Dkt. No. 44-1 at 15–16). Domanic suggests this shows that his Jewish ethnicity—not his religious beliefs—ended the franchise discussions. (*See* Dkt. No. 9 at 2–4); (Dkt. No. 42 at 12). But a single disputed[4] remark by a non-decisionmaker does not create a genuine issue of material fact on pretext. *See Eyob v. Mitsubishi Caterpillar Forklift Am. Inc.*, No. 4:16-CV-01688, 2017 WL 3215171, at *8 (S.D. Tex. July 28, 2017) ("When a discriminatory remark is used as circumstantial evidence of pretext, it is probative of discriminatory intent, but it cannot be used as the sole proof of pretext." (first citing *Cervantez v. KMGP Servs. Co.*, 349 F.App'x 4, 11 (5th Cir. 2009) (per curiam); and then citing *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003))), *aff'd*, 745 F.App'x 209 (5th Cir. 2018); *see also Garcia v. Penske Logistics, LLC*, 165 F.Supp.3d 542, 561 (S.D. Tex. 2014) ("The Fifth Circuit, however, has repeatedly stated that remarks alone cannot provide sufficient evidence of pretext to meet a plaintiff's burden under the third step." (first citing *Cervantez*, 349 F.App'x at 11; then citing *Palasota*, 342 F.3d at 578; and then citing *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 403 n.7 (5th Cir.2001))). This is especially true in the face of

---

4     (*See* Dkt. No. 42 at 12) (disputing that statement was made).

14

consistent, well-documented evidence to the contrary. (*See, e.g.*, Dkt. No. 42-1 at 3, 7); (Dkt. No. 42-2 at 2–12); *see also Garcia v. Penske Logistics, LLC*, 165 F.Supp.3d 542, 561 (S.D. Tex. 2014) ("The Fifth Circuit . . . has repeatedly stated that remarks alone cannot provide sufficient evidence of pretext to meet a plaintiff's burden under the third step." (collecting cases)).

Christian Brothers Auto has presented ample evidence that it applies its religious policy consistently. Its application materials and supporting evidence repeatedly emphasize that the company is a Christian faith-based organization. (*See, e.g.*, Dkt. No. 42-1 at 3, 7); (Dkt. No. 42-2 at 12, 16). It has never granted a franchise to a non-Christian in its 40-year history. (Dkt. No. 42-1 at 7). And crucially, *it has awarded franchises to individuals of Jewish ancestry who are Christians*. (Dkt. No. 42-1 at 11) (describing at least two franchisees who are ethnically Jewish but religiously Christian). That record undercuts any inference that the Christian-only requirement was used to exclude Domanic based on his ethnicity rather than his faith. *See Thomas v. Johnson*, 788 F.3d 177, 180 (5th Cir. 2015) (finding no pretext where the policy was consistently applied to similarly-situated individuals).

In short, Domanic has not produced evidence that Christian Brothers Auto's stated reason was a proxy for ethnic exclusion. His subjective belief that he was rejected because of his race is not enough to survive summary judgment. *See Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 426–27 (5th Cir. 2000). Accordingly, he has failed to create a genuine issue of material fact on pretext.

\* \* \*

The Court finds that Christian Brothers Auto has offered a credible and legally permissible explanation for its decision, and that Domanic has not shown that this explanation was a pretext for racial discrimination. No reasonable jury could conclude that Domanic's race—rather than his religion—foreclosed his future as a Christian Brothers franchisee. Summary judgment is therefore appropriate.[5]

## IV. CONCLUSION

For the above reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Dkt. No. 42). Plaintiff's claims are therefore **DISMISSED WITH PREJUDICE**. A final judgment will issue separately.

It is SO ORDERED.

Signed on September 26, 2025.

                                                      */s/ Drew B. Tipton*
                                                    **DREW B. TIPTON**
                                                    **UNITED STATES DISTRICT JUDGE**

---

[5] Because the Court grants summary judgment on Domanic's Section 1981 claim, it need not reach Christian Brothers Auto's ministerial-exception defense.